NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-193-JBC

STEPHEN L. KELLER                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

GREGORY F. VAN TATENHOVE, ET AL.                          DEFENDANTS


Plaintiff, Stephen L. Keller, who is currently confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), has filed a *pro se* complaint under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The plaintiff has paid the requisite filing fee.

This matter is before the court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v.*

*Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. § 1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## DEFENDANTS

The plaintiff has named the following entities and/or individuals as defendants: (1) Gregory F. Van Tatenhove, the United States Attorney for the Eastern District of Kentucky, and (2) Patrick Malloy, Assistant United States Attorney for the Eastern District of Kentucky.  The plaintiff asserts claims against the defendants in their individual capacities only [Complaint, p. 2].

## CLAIMS

The plaintiff alleges that the defendants violated his right to due process of law, guaranteed under the Fifth Amendment of the United States Constitution.  He alleges that the defendants conspired to violate his constitutional rights by maliciously prosecuting him and causing him to be imprisoned.

## RELIEF REQUESTED

The plaintiff seeks:  (1) $500,000,000.00 in monetary damages;  (2) punitive damages in the amount of 2.5 billion dollars; (3) court costs; (4) reasonable attorney's fees; (5) a temporary restraining order and a preliminary injunction preventing the Bureau of Prisons ("BOP") from either harassing or transferring him to another jurisdiction in retaliation for having filed the instant *Bivens* proceeding; (6) an order

2

compelling the United States Attorney's Office to produce the personnel file of Defendant Patrick Malloy;  (7) an order attaching and freezing his (plaintiff's) personal assets; and (8) an order directing the BOP to allow the plaintiff to participate in media interviews.    Additionally, the plaintiff propounded a request for production of documents when he filed his complaint.

## PLAINTIFF'S CRIMINAL CONVICTIONS
### 1.  2002 Indictment

On July 11, 2002, the United States issued a forty-seven-count indictment against the  plaintiff, who was at that time the owner, Chairman of the Board, President, and Chief Executive Officer of Kelco, Incorporated ("Kelco").  *See* Lexington Criminal Action No. 02-95-1, *United States v. Stephen L. Keller, et al.* ("the 2002 Indictment").[1]    The indictment alleged that Kelco, a Kentucky corporation headquartered in Lexington,  Kentucky, was a viatical settlement company involved in the purchase of life insurance policies from the terminally ill,[2]  and in most cases, the sale of those policies to private investors or other companies.  According to the

---

[1] The 2002 Indictment also named two other individuals and two corporations as defendants.

[2]

The indictment defined the term "viaticate" as being the process by which a terminally ill person, who owns a legitimately obtained life insurance policy, can "viaticate" that policy by selling it, together with the right to receive the death benefit under that policy, to a purchaser.  The indictment described a "viatical settlement" as one under which a terminally ill person immediately sells to a purchaser a portion of his life insurance policy's death benefit, and the purchaser receives the entire death benefit from the insurance company when the terminally ill person dies [ *See* 2002 Indictment, ¶ 1-2].

2002 Indictment, Genesis Viatical, Incorporated ("Genesis"), a Kentucky corporation, was a viatical brokerage company which located and recruited terminally ill persons with life insurance policies.  The 2002 Indictment alleged that Genesis located these individuals in order to sell their life insurance policies to Kelco [*See* 2002 Indictment, ¶ 3].  The 2002 Indictment alleged that Kelco and Genesis, while being nominally separate entities, were both controlled by the plaintiff and were part of a collection of companies known as the "Kelco Group."

The 2002 Indictment alleged that the plaintiff and his co-defendants engaged in numerous illegal actions and violated the following federal statutes in the furtherance of Kelco's viatical insurance business:  (1) Conspiracy to Commit Mail and Wire Fraud under 18 U.S.C. §371 (Count One); (2) Mail Fraud under 18 U.S.C. §1341 (Counts Two through None); (3) Wire Fraud under 18 U.S.C. § 1343 (Counts Ten through Twenty-Three); (4) Conspiracy to Commit Money Laundering under 18 U.S.C. § 1956(h) (Count Twenty-Four); and (5) Money Laundering under 18 U.S.C. § 1956(a)(1)(A)(i).   Count 47 of the 2002 Indictment sought a Criminal Forfeiture recovery,  under 18 U.S.C. § 982, of numerous assets including real estate, bank accounts, and a money judgment against the plaintiff and the other defendants named in the 2002 Indictment.

In March, 2003, a jury convicted the plaintiff of all counts of the 2002 Indictment.  On August 13, 2003, the court entered a "Judgment in Criminal Case" ("the 2003 Judgment"), sentencing the plaintiff to a 168-month term of imprisonment on each of counts 24 through 46, and 60 months on each of counts 1 through 23, to

4

be served concurrently.   In the 2003 Judgment, the court also imposed a term of supervised release and a criminal monetary penalty in the amount of $4,600.00, and ordered the plaintiff to pay $661,292.00 in restitution [*see United States v. Keller*, 02-95-1, Record No. 319].

The plaintiff filed a "Notice of Appeal" of the 2002 Judgment and a "Revised Notice of Appeal" [*Id.*, Record Nos. 331 and 332].   On December 21, 2004, the Sixth Circuit affirmed the plaintiff's and his co-defendants' convictions.[3]   The plaintiff and his co-defendants then sought an *en banc* rehearing.   On May 31, 2005, the Sixth Circuit entered an "Order on the Petition to Rehear."   In that order, the Sixth Circuit dismissed as non-meritorious the plaintiff's claim that the Sixth Circuit's prior ruling on jury instructions should be reconsidered.   The Sixth Circuit did, however, vacate and remand the plaintiff's and his co-defendants' *sentences* in light of the Supreme Court's opinion in *Blakely v. Washington*, 542 U.S. —, 124 S. Ct. 2531 (2004).[4]

## 2.   2004 Indictment

On June 3, 2004, the plaintiff was charged in a second indictment in this court.

---

[3]   The Sixth Circuit instructed that its opinion would not be recommended for full text publication pursuant to Local Rule 28(g).

[4]   The Sixth Circuit based its decision to vacate the sentences as follows:

"It is clear that the sentences imposed in this case, based on an amount of loss calculated by the district court on facts not found by the jury and enhanced on the basis of what the district court assumed were mandatory provisions of the sentencing guidelines, must be vacated and the cases remanded for sentencing under *Booker*, *Oliver* [397 F.3d 369, 380-81 (6th Cir. 2005) (plain error review of Sixth Amendment violation], and *Barnett* [398 F.3d 516, 530 (6th Cir. 2005) (plain error review of mandatory application of the sentencing guidelines)]."

Order, *USA v. Keller, et al.*, Sixth Circuit Nos. 03-6085/6086/6088/6089, May 31, 2005, p. 2.

*See United States of America v. Stephen L. Keller*, 04-71-1 ("the 2004 Indictment").[5]
The 2004 indictment alleged that on October 14, 2003, the plaintiff was notified to appear at a Bond Status Hearing on October 20, 2003, in connection with his conviction under the 2002 Indictment, but that he did not appear.  The 2004 Indictment charged the plaintiff of the following offenses:  (1) Conspiracy to Knowingly Fail to Appear before the court, as required by the conditions of his release, in violation of 18 U.S.C. § 3146(a) (Count One); (2) Failure to Appear before the court, in violation of 18 U.S.C. §§ 3146(a) and 3147(1) (Count Two); and (3) Destruction or Removal of Property to Prevent Seizure, in violation of 18:2232(a), 18 U.S.C. § 2, and 18 U.S.C. § 3147(1) (Count Four).

On November 19, 2004, the plaintiff pled guilty to Count Two of the 2004 Indictment ("Failure to Appear for Bond Status Hearing, Aiding and Abetting") in violation of 18 U.S.C. § 3146(a), 18 U.S.C. § 2, and 18 U.S.C. § 3147(1).  The court dismissed Counts One and Four on motion of the United States.  On January 7, 2005, the court entered a "Judgment in Criminal Case" ("the 2005 Judgment") and imposed a twenty (20)-month sentence, to be served consecutively to the prison term imposed in the 2003 Judgment.  The plaintiff did not appeal the 2005 Judgment.

<u>ALLEGATIONS OF THE COMPLAINT</u>

The plaintiff alleges that beginning in January 1995, through and including May, 2005, the defendants conspired to punish the plaintiff for legally engaging in the

---

[5] The 2004 Indictment also named other individuals as defendants.

business of and/or pursuing the profession of viatical insurance.  The plaintiff alleges that the defendants knew, or should have known, that the plaintiff possessed the right to practice viatical insurance without incurring reprisals from the defendants.  He further alleges that the defendants violated his constitutional rights by :  (1) engaging in bad faith, vindictive and malicious prosecution; (2) using false, illegal and misleading tactics and information; (3) confabulating witnesses and immediate family members; (4) using false and perjured testimony; and (5) abusing the judicial process [Complaint, pp. 3 and 4].  The plaintiff further asserts that the defendants retaliated against him because he chose to defend himself at trial [*Id.*, p. 3].

The plaintiff contends that the object of the defendants' conspiracy was to punish and falsely imprison him because he was engaged in a profession which had become a target of the Justice Department and large insurance companies [*Id.*]. Specifically, the plaintiff alleges that Defendant Malloy

> "covertly used members of his immediate family, to-wit, his wife Jeannie Malloy, who during the time period mentioned above was in the employ of plaintiff (Kelco) to illegally remove copies of documents from Plaintiff's business and give to him [Malloy] in an effort to illegally prosecute and imprison plaintiff."

[Complaint, p. 4, ¶ (C)].

The plaintiff alleges that Defendant Malloy's wife and daughter provided Kelco's documents to Defendant Malloy, who then presented the illegally obtained information to this court in furtherance of the United States' prosecution of him.  The plaintiff asserts that Malloy also directed, assisted and instructed unspecified "prosecution witnesses" to testify falsely and give perjured testimony, which resulted in the

plaintiff's conviction and imprisonment [*Id.*, p. 5].

The plaintiff alleges that Defendant Van Tatenhove "with bad purpose and evil motive" actively encouraged and participated in every illegal act which the plaintiff attributes to Defendant Malloy.  In the same paragraph, the plaintiff also alleges that Van Tatenhove is liable to him for Malloy's acts under the principle of *respondeat superior* [*Id.*].

The plaintiff alleges that as a result of the defendants' actions, he has been: (1) deprived of due process of law, (2) maliciously prosecuted, (3) deprived of a fair trial, and  (4) falsely imprisoned, and has suffered loss of livelihood, pain, emotional distress, trauma, anxiety, depression, and loss of family relationship [*Id.*].

DISCUSSION
1.  Complaint and Request for Damages

The instant complaint stems from the plaintiff's criminal conviction in 2003. It is  an attempt by the plaintiff to collaterally attack that conviction.  *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L. Ed.2d 383 (1994), operates as a complete bar to the plaintiff's claim.

*Heck v. Humphrey* precludes the recovery of civil damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, where the plaintiff is unable to prove that the underlying conviction or sentence has been reversed on direct appeal; expunged by executive order; declared invalid by a state tribunal authorized to make such determination; or called into question by a federal court's

8

issuance of a writ of habeas corpus.  *Id.*, 512 U.S. 477, 486-87.[6]

The plaintiff did not refer to the fact that he had appealed his 2003 conviction. He did not refer to the fact that the Sixth Circuit affirmed his conviction on December 21, 2004, or that he sought an *en banc* rehearing of the Sixth Circuit's December 21, 2004 ruling.  Pursuant to the Sixth Circuit's order of May 31, 2005, the plaintiff will be re-sentenced and may receive a lesser sentence.   The plaintiff's conviction, however, has not been reversed on direct appeal; expunged, declared invalid by a tribunal authorized to make such a determination; or called into question by a federal court's issuance of a writ of habeas corpus.  The plaintiff's conviction was affirmed.

A plaintiff alleging a malicious prosecution claim must demonstrate that the previous prosecution, alleged to have been malicious, was terminated in his favor. *Dunn v. Tennessee*, 697 F.2d 121, 127 (6th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983) (pre-*Heck* ; finding that "favorable termination of prior criminal proceeding marks point at which 1983 claim for malicious prosecution accrues"); *White v. Rockafellow*, 1999 WL 283905, at * 1 (6th Cir. April 27, 1999) (same; holding that plaintiff's statute of limitations for his § 1983 claim of malicious prosecution did not begin to run until a notice of *nolle prosequi* was sent, because the criminal proceeding was not terminated in his favor until the prosecutor had filed a notice of *nolle prosequi*); *Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir.1999) (holding that

---

[6]

While *Heck* applies to civil rights action against state actors brought under 42 U.S.C. § 1983, it applies with
equal force to civil rights actions asserted against federal actors under *Bivens*.  *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir.1998).

non-prisoner appellant's civil rights action "must be dismissed without prejudice until the state proceedings have resulted in a not guilty verdict, or any conviction has been overturned on appeal or questioned in a federal habeas corpus petition"); *Singleton v. City of New York*, 632 F.2d 185, 194-195 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981) (pre- *Heck*; plaintiff's claim of deprivation of 1983 civil rights through malicious prosecution may not be stated without alleging and proving that the prosecution terminated in some manner, indicating that plaintiff was not guilty of the offenses charged).

Accordingly, *Heck v. Humphrey* precludes the instant plaintiff from asserting either a civil rights or a conspiracy action challenging his criminal conviction. *Id.*, 512 U.S. 477, 486-87; *Hermansen v. Chandler*, 2000 WL 554058, at * 2 (6th Cir. April 28, 2000); *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994). The complaint is dismissed for failure to state a claim upon which relief can be based. *See* 28 U.S.C. § 1915(e)(2)(ii).

The following motions of the plaintiff are therefore denied as moot: (1) "Motion to Compel the United States Attorney's Office to Produce the Personnel File of Defendant Patrick Malloy" [Record No. 3]; (2) "Motion to Attach and Freeze Personal Assets of Stephen L. Keller" [Record No. 8]; and (3) "Motion for Order to the United States Bureau of Prisons Allowing Petitioner Participation in Media Interviews" [Record No. 9].

2.  Motion For Temporary Restraining Order/Preliminary Injunction [Record No. 2]

The plaintiff seeks a temporary restraining order and a preliminary injunction,

alleging that these emergency measures are necessary in order to prevent the BOP from either harassing him or transferring him to another jurisdiction in retaliation for having filed the instant *Bivens* proceeding  [Record No. 2].  The court must deny this motion for three reasons.

First, to the extent that the plaintiff alleges that he expects the BOP to harass him or transfer him, his claims of injury are purely speculative.  A court must have an actual, existing controversy before it.  To satisfy Article III's standing requirements, a plaintiff must show:  "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L. Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L. Ed.2d 351 (1992)); *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*,  263 F.3d 513, 523-24 (6th Cir. 2001).  The instant plaintiff's allegations of possible harassment and/or transfer are based on pure conjecture, not existing facts.

Second, a retaliation claim has three elements:  (1) the plaintiff engaged in protected conduct; (2) defendant took an adverse action against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v.*

11

*Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  The plaintiff has not established a valid retaliation claim, because a transfer to another prison facility does not qualify as "adverse action."

"In *Meachum v. Fano*, 427 U.S.215, 223, 96 S.Ct. 2532, 2538 (1976), the Supreme Court found that the transfer of a prisoner from one institution to another was unprotected by 'the Due Process Clause in and of itself,' even though the change in facilities involved a significant modification in conditions of confinement, later characterized by the Court as a 'grievous loss.'"  *Hewitt vs. Helms*, 459 U.S. 460, 467-68, (1983) (citing *Moody v. Daggett*, 429 U.S. 78, 88, n.9 (1976)).  Thus, even if the instant prisoner was threatened with a return to a prison facility, it would not qualify as "adverse action" for purposes of establishing a First Amendment retaliation claim.  As the plaintiff has failed to allege actionable retaliation, he has not established that he is entitled to preliminary or injunctive relief.

Third, where a party seeks a *preliminary* injunction, the district court must consider the following factors:

(1)     whether the movant has a "strong" likelihood of success on the merits;

(2)     whether the movant would otherwise suffer irreparable injury;

(3)     whether issuance of a preliminary injunction would cause substantial harm to others; and

(4)     whether the public interest would be served by issuance of a preliminary injunction. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*,

12

64 F.3d 1026, 1030 (6th Cir. 1995)).

The decision to grant or deny a preliminary or permanent injunction is within the sound discretion of the district court. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1991). *See Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994); *Tyson Foods, Inc. v. McReynolds*, 685 F.2d 99, 101 (6th Cir. 1989).

While these four factors are not prerequisites which must all be met, they are considerations which should be balanced. *In re DeLorean Motor Company*, 755 F.2d 1223, 1229 (6th Cir. 1985). "The four factors . . . may not be weighed mechanically in order to determine if the injunction should be issued. No single factor is determinative but rather, the Court should weigh each of the factors in light of the factual circumstances of the particular case." *Columbia Gas v. Exclusive Natural Gas*, 688 F. Supp. 1245, 1248 (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978), *cert. granted* 440 U.S. 944 (1979), *cert. dismissed* 442 U.S. 925 (1979).

Considering these factors in relation to the instant case, the court finds that the plaintiff's request for emergency relief is unwarranted. The court has already concluded that success on the merits is unlikely because *Heck v. Humphrey* precludes any recovery by the plaintiff. The plaintiff cannot demonstrate that he would suffer irreparable injury if temporary emergency relief is denied, because he has no liberty interest in being confined in any particular BOP corrrectional facility. The court finds nothing to suggest that the public or others would be harmed by failing to take emergency action at this time. Finally, as to the final factor, the courts are ever

13

cautioned to stay out of the business of micro-managing prisons.  *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).   The plaintiff's request for emergency and/or preliminary injunctive relief is denied.

<u>CONCLUSION</u>

Accordingly, the court being advised, **IT IS ORDERED** as follows:

(1)  The plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction" [Record No. 2] is **DENIED**.

(2)  The plaintiff's "Motion to Compel the United States Attorney's Office to Produce the Personnel File of Defendant Patrick Malloy" [Record No. 3] is **DENIED** as moot.

(3)  The plaintiff's "Motion to Attach and Freeze Personal Assets of Stephen L. Keller" [Record No. 8] is **DENIED** as moot.

(4)  The plaintiff's "Motion for Order to the United States Bureau of Prisons Allowing Petitioner Participation in Media Interviews" [Record No. 9] is **DENIED** as moot.

(5)  This action is **DISMISSED**, *sua sponte*, from the docket of the court, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the defendants.

14

Signed on June 8, 2005

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY